**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

In re:

SCOTT W. CHARMOLI and
LYNNE M. CHARMOLI,

Debtors.

Case No. 22-24358-gmh

Chapter 11

---

JACKSON FAMILY DENTISTRY, LLC
and SCOTT W. CHARMOLI,

Plaintiffs and Counterclaim-
Defendants,

v.

MAJOR DENTAL PARTNERS, LLC,
PAKO MAJOR, and JACKSON FAMILY
DENTAL, LLC,

Defendants and Counterclaim-
Plaintiffs.

Adv. No. 22-2136-gmh

---

**REPLY IN SUPPORT OF (I) MOTION TO ABSTAIN, FOR RELIEF FROM THE AUTOMATIC STAY, AND TO EXTEND TIME FOR MOVANTS TO FILE PROOF OF CLAIM; AND (II) MOTION FOR REMAND, TO ABSTAIN AND FOR COSTS AND ATTORNEYS' FEES**

---

Major Dental Partners, LLC ("MDP") and Dr. Pako Major ("Dr. Major" and together with MDP, "Major Dental"), creditors in the above-captioned chapter 11 bankruptcy case, by and through their undersigned counsel, hereby submit their reply (the "Reply") in support of (A) the motion (i) to abstain, in part, from hearing Major Dental's pending adversary proceeding against Scott W. Charmoli (the "Debtor"), pursuant to section 1134(c)(1) of title 28 of the United States Code; (ii) for relief from the automatic stay to allow Major Dental to liquidate its claims against the Debtor and non-debtor affiliates in pending state court litigation, pursuant to section

362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"); and (iii) extending the deadline for Major Dental to file any proof of claim in this chapter 11 case (Docket No. 107) (the "Motion to Abstain"); and (B) the motion to remand the state court litigation and abstain, pursuant to 28 U.S.C. § 1334(c) and 28 U.S.C. § 1452(b), and award Major Dental its costs and attorneys' fees, pursuant to 28 U.S.C. § 1447(c) (Adv. Docket No. 9) (the "Motion to Remand" and together with the Motion to Abstain, the "Motions"). In support thereof, Major Dental states as follows:

## PRELIMINARY STATEMENT

1. The Debtor has been convicted of seven felonies arising from his scheme to injure and defraud patients and their insurers. This scheme is the basis for Major Dental's claims against the Debtor and his affiliated company, Jackson Family Dentistry, LLC ("Jackson Family Dentistry"), for material misrepresentations and fraud in connection with the sale of the Debtor's dental practice.

2. Major Dental believes that the pending State Court Litigation should remain in the State Court because, *inter alia*, the claims and defenses all arise under state law and it would be the most efficient path forward. The Debtor's opposition to the Motions is largely premised on overstating the importance of the State Court Litigation to the chapter 11 process and misapplying the factors relevant to abstention and stay relief. Major Dental respectfully requests that the Court overrule the Debtor's objections and grant the Motions.

## ARGUMENT

### I. Mandatory Abstention Applies, Pursuant to 28 U.S.C. § 1334(c)(2)

3. The Motion to Remand requests that the Court remand the State Court Litigation because this Court does not have jurisdiction over claims against Jackson Family Dentistry and abstention is mandatory pursuant to 28 U.S.C. § 1334(c)(2). The Debtor contends that mandatory abstention does not apply. The Debtor is wrong.

### A. All the Elements of Mandatory Abstention Are Satisfied

4. The Debtor concedes that four of the five elements for mandatory abstention, pursuant to 28 U.S.C. § 1334(c)(2), are satisfied.[1] (Response at ¶ 22). The only element in dispute is whether the claims can be timely adjudicated in the State Court. (*Id.*).

5. The Debtor correctly states that courts consider four factors in evaluating the timely adjudication element: (i) the backlog of the state court's calendar; (ii) the status of the bankruptcy proceeding; (iii) the complexity of the issues presented; and (iv) whether the state court proceedings would prolong the administration of the estate. *In re DeMert & Dougherty, Inc.*, 271 B.R. 821, 843 (Bankr. N.D. Ill. 2001). While this is a matter of judicial discretion, "the congressional policy to have state law claims heard in state court cannot be overlooked." *In re World Solar Corporation*, 81 B.R. 603, 612 (Bankr. S.D. Cal. 1988). Contrary to the Debtor's assertions, these factors show that the State Court can timely adjudicate the State Court Litigation.

6. <u>The Backlog of the State Court's Calendar</u>. The Debtor contends that there is a backlog in the State Court that would prevent the timely adjudication of the State Court Litigation. The basis for this assertion is incomplete statistics over a four-year period. (Response at ¶ 25). The Debtor contends these charts show that "this Court has a smaller backlog of cases such that it is in a better position than the State Court to timely adjudicate the Claims and Counterclaims." (Response at ¶ 27). This is not relevant. "The question is whether the case can be adjudicated timely in state court – not which court can do it faster." *In re Laddusire*, 494 B.R. 373, 380 (Bankr. W.D. Wis. 2013). Available statistics show that the median time to disposition of a case in the

[1] The Debtor contends that the "underlying causes of action" are "currently" non-core because Major Dental has not yet filed a claim. There is no stated significance to this temporal qualifier, but in any event, Major Dental will not file a claim until after the State Court Litigation is concluded, should the Court grant the Motions. Accordingly, the Debtor's qualification is irrelevant.

State Court is a mere 102 days.[2] Major Dental has provided ample discovery to the Debtor in the State Court Litigation and Major Dental even filed a motion for summary judgment before it was aware of the bankruptcy filing. There is no backlog in the State Court that would prevent the timely adjudication of the State Court Litigation.

7. To the extent the Court considers a comparison of the two courts, the Debtor's offered statistics are both misleading and irrelevant. First, the Bankruptcy Court statistics *exclude* adversary proceedings. Adversary proceedings can be as burdensome – if not more burdensome – to the Bankruptcy Court, yet the Debtor fails to include the number of adversary proceedings in its chart. This artificially reduces the number of filings in the Bankruptcy Court over the last four years.

8. The Debtor's chart, moreover, does not explain how the number of filings over several years shows that the Bankruptcy Court has less work than the State Court. Indeed, a better comparison would be the number of cases pending. The following chart shows the number of cases pending in the State Court and those pending in the Bankruptcy Court:[3]

| | **Washington County** | **Bankruptcy Court, E.D. Wis.** | | |
|---|---|---|---|---|
| | | **Bankr.**[4] | **Adv.** | **Total** |
| **Cases Pending** | 1,809 | 10,754 | 87 | 10,841 |
| **Avg Cases Per Judge**[5] | 452.25 | 2,987.22 | 24.17 | 3,011.39 |

[2] *See* Circuit Court Statistics, disposition summary.

Available at: https://www.wicourts.gov/publications/statistics/circuit/circuitstats.htm

[3] These statistics are for 2021. Washington County records are not available for 2022.

[4] The bankruptcy and adversary proceedings are available at https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

[5] The chart uses the Debtor's assumption of 4 judges in State Court and 3.6 judges in Bankruptcy Court.

9. This chart shows that the Bankruptcy Court has nearly *six times* the number of cases pending. Indeed, the average judge in the Bankruptcy Court has *over one thousand cases more* than the entirety of Washington County. This shows that the Bankruptcy Court clearly has more pending cases – and therefore more work – than the State Court.

10. Additionally, in non-core proceedings, there is an additional delay that will be associated with a request to withdraw the reference, as Major Dental will not consent to the entry of a final order by the Bankruptcy Court. *See In re DeMert & Dougherty, Inc.*, 271 B.R. at 843 (noting withdrawal of the reference adds an "additional layer of procedure [that] will increase the time for adjudication in the bankruptcy court."). This also favors a finding that the case will be timely adjudicated in the State Court.

11. Status of Bankruptcy Proceeding. The Debtor cites to *World Solar Corp. v. Steinbaum*, 81 B.R. 603 (Bankr. S.D. Cal. 1988) for the proposition that timely adjudication weighs against abstention when a debtor is seeking to reorganize through chapter 11. (Response at ¶ 29). The *World Solar* case, however, notes that this fact is important when "lengthy delays" could affect the timing of resolving claims that could "substantially enhance the viability of the estate . . . ." *Id.* at 612. That is not the case here. Indeed, there would be no "lengthy delay" in this case, as the State Court's median time to dispose of cases is a mere 102 days.[6]

12. Additionally, any recovery would not "substantially enhance the viability of the estate." The Debtor's own liquidation analysis ascribes no value to the claims against Major Dental. (*See* Plan of Reorganization, Ex. 1 (Docket No. 110)). This makes sense because the jury's findings in the criminal case show that the Debtor orchestrated a scheme to defraud patients and insurers, thereby demonstrating that the amounts contemplated in the sale transaction were overstated and fraudulent. At a minimum, Major Dental's counterclaims will offset any chance

[6] *See* Circuit Court Statistics, disposition summary. Available at wicourts.gov/publications/statistics/circuit/circuitstats.htm.

of a "substantial" recovery to the estate, and the more likely result is an award in favor of Major Dental.

13. Finally, the Debtor argues that a decision on confirmation of the proposed Plan is not ripe because the Debtor must first resolve, *inter alia*, the State Court Litigation and the declaratory action with Aspen American Insurance Company (the "Declaratory Action"). The Declaratory Action is far from a conclusion. Aspen American Insurance Company ("AAIC") has filed a motion to withdraw the reference, which will not be fully briefed until March 8, 2023. (*See* Adv. Pro. No. 22-02130 (Docket No. 19)). The motion must then be transferred to the District Court for adjudication, which will undoubtedly add months to the process. Additionally, the deadline for AAIC to respond to the Complaint is February 14, 2023. Accordingly, the Declaratory Action is much more likely to delay the Plan than the outcome of the State Court Litigation. The status of the bankruptcy proceeding, therefore, does not prevent the timely adjudication of the State Court Litigation in the State Court.

14. Complexity of the Issues Presented. The Debtor asserts that the issues in the State Court Litigation "are not necessarily complex . . . ." (Response at ¶ 28). The Debtor claims this favors the Bankruptcy Court hearing the matter because it is more familiar with the record. (*Id.*). The Debtor misunderstands the law. State Courts often adjudicate the claims at issue in the State Court Litigation, the case could be adjudicated on summary judgment (Major Dental has already filed such a motion), and the Bankruptcy Court has not made any substantive decisions on the issues in the State Court Litigation. Accordingly, the lack of complexity and status of the case in State Court favors abstention. *See In re New 118th LLC*, 396 B.R. 885, 895 (Bankr. S.D.N.Y. 2008) (finding claims that were ordinarily decided by state court, ripe for summary judgment, and lack of Bankruptcy Court having made any substantive decisions warranted abstention); *see also Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 587 (Bankr. E.D. N.Y. 2009).

15. Whether State Court Litigation Would Prolong Administration of the Estate. The Debtor refers to three pending matters that must be resolved before confirmation can be considered – the State Court Litigation, the Declaratory Action and claims related to the aggrieved patients. (Response at ¶ 31). But as previously noted, the State Court Litigation would not move more swiftly if removed because of the higher case volume of the Bankruptcy Court and the fact that Major Dental will not consent to the entry of a final order and will seek to withdraw the reference. Accordingly, allowing the State Court Litigation to proceed in State Court will likely increase, rather than prolong, the administration of the estate.

16. Moreover, the Declaratory Action will likely remain pending well after the State Court Litigation is completed. The State Court Litigation will, therefore, not be the cause of any delay.

17. Based upon the foregoing, mandatory abstention applies, pursuant to 28 U.S.C. § 1334(c)(2), and the State Court Litigation should be remanded to the State Court.

**B. The Debtor Argues for An Overly Broad Interpretation of "Related to" Jurisdiction to Remove Actions Related to Non-Debtor Jackson Family Dentistry**

18. The Debtor argues that the claims by and against Jackson Family Dentistry were properly removed because the Court has "related to" jurisdiction over these claims pursuant to 28 U.S.C. § 1334. This assertion is without merit.

19. Here, the Debtor's interest in claims by and against non-debtor Jackson Family Dentistry do not establish "related to" jurisdiction. The Debtor argues, theoretically, that any recovery by Jackson Family Dentistry would affect the amount of property for distribution for creditors because any funds received by Jackson Family Dentistry could flow to the estate, after Jackson Family Dentistry pays all of its creditors. (*See* Response at ¶ 17). This is nothing more than a theoretical economic stake in a non-debtor, which has been expressly rejected by other Courts. *Mazzolini v. Lehman Bros. Real Estate Fund III, L.P.*, 2011 WL 4435649, at *4 (N.D. Ill.

Sept. 23, 2011) (stating "the Court is not convinced that a debtor's 'economic stake' in a non-debtor is sufficient to establish 'related to' jurisdiction."). Additionally, the Debtor's economic stake theory is belied by his liquidation analysis, which puts no value on the claims against Major Dental or the Debtor's interest in Jackson Family Dentistry. (Plan of Reorganization, Ex. 1 (Docket No. 110)).

20. The Debtor further argues that the claims of Major Dental against non-debtor Jackson Family Dentistry are "related to" the bankruptcy case because a judgment against Jackson Family Dentistry could be joint and several against the Debtor. This, again, is nothing more than a remote economic stake in the outcome of litigation against a non-debtor. The Debtor will undoubtedly have the ability to challenge and defend the claims of Major Dental in its direct claims against him. Accordingly, the Debtor's arguments for the possibility of joint and several liability are unpersuasive.

21. The Debtor cites to *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994) for the proposition that "related to" jurisdiction can cover suits to which the debtor is not even a party. (Response at ¶ 18). In *Zerand-Bernal*, the Court was faced with a products liability suit that was filed against a debtor, the purchaser of the debtor's business, and other parties. *Id*. at 161. The purchaser filed an adversary proceeding in the bankruptcy case to enforce the sale order, which provided that the sale to the purchaser was free and clear of all liens, claims and encumbrances. *Id.* The Bankruptcy Court dismissed the adversary proceeding for lack of jurisdiction and the purchaser appealed. The Seventh Circuit affirmed and held that the suit was not "related to" the bankruptcy case within the meaning of 28 U.S.C. § 1334. *Id.* This case, therefore, actually supports mandatory abstention and the case should be remanded to the State Court.

### C. Major Dental Is Entitled to Recover Its Costs and Attorneys' Fees

22. The Motion to Remand seeks costs and attorneys' fees, pursuant to 28 U.S.C. § 1447(c). The Debtor opposes this request, arguing that it had an objectively reasonable basis to seek removal. For the reasons articulated above, Major Dental believes the Debtor did not have an objectively reasonable basis to seek removal. Indeed, the elements for mandatory abstention are clearly met, and the Court does not have jurisdiction over the claims by and against non-debtor Jackson Family Dentistry. Moreover, the Debtor argues, in a footnote, that the existence of mandatory abstention does not mean that removal was improper because mandatory abstention "requires an affirmative act by a party." (Response at n. 3). The Debtor knew Major Dental opposed removal because it asked Major Dental to consent before it filed the notice of removal. Thus, the Debtor cannot reasonably argue that it did not expect Major Dental to assert is right to mandatory abstention. Major Dental is entitled to its costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c).

## II. If Mandatory Abstention Does Not Apply, Permissive Abstention Would Still Apply

23. Assuming *arguendo* that the Court finds mandatory abstention does not apply, then the applicable factors nonetheless favor permissive abstention. Those factors are:

i. The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

ii. The extent to which state law issues predominate over bankruptcy issues;

iii. The difficulty or unsettled nature of the applicable law;

iv. The presence of a related proceeding commenced in state court or other non-bankruptcy court;

v. The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

vi. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

vii. The substance rather than form of an asserted "core" proceeding;

viii. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

ix. The burden of the bankruptcy court's docket;

x. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

xi. The existence of a right to a jury trial; and

xii. The presence in the proceeding of non-debtor parties.

*In re Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993).

24. The following factors clearly favor permissive abstention.

25. Effect on Administration of the Estate. The Debtor claims the State Court Litigation must be resolved before confirmation of the Plan because those claims "will have a direct impact on the funds available to pay creditors." (Response at ¶ 37). The Debtor overstates the importance of the State Court Litigation to the outcome of the Plan. As previously stated, the Debtor has ascribed no value to the State Court Litigation in its liquidation analysis. Additionally, chapter 11 plans are *routinely* confirmed despite the fact that the amounts available to creditors are not finalized. The Debtor's assertion that the claims by and against Major Dental *must* be decided prior to confirmation is clearly without merit.[7]

26. The Extent to Which State Law Predominates Over Bankruptcy Law. The Debtor acknowledges the State Court Litigation is based entirely upon state law. (Response at ¶ 42). However, the Debtor somehow claims, "it is more efficient to litigate the underlying claims

[7] The Debtor also claims, without explanation, that the Dischargeability Action must be resolved prior to confirmation. It is unclear why the question of dischargeability would need to be resolved prior to confirmation. At a minimum, the Debtor could prepare a range of scenarios based upon whether or not the Dischargeability Action is successful. This is a common occurrence in chapter 11 cases. The Debtor also cites a "cautionary tale" from another case in the Eastern District of Wisconsin. The case is clearly an outlier, as it was subject to an extended appeal process (which was initiated by the debtor that was represented by Debtor's counsel). The delay in that case was thus caused by the debtor.

alongside the non-dischargeability claim." (*Id.*). This statement is irrelevant to whether state law predominates (which it does). This factor unquestionably favors abstention.

27. The Difficulty of the Law. The parties agree that the law related to the State Court Litigation is not difficult or unsettled. (Response at ¶ 43). However, contrary to the Debtor's contentions, this factor actually favors abstention. *See In re Laddusire*, 494 B.R. at 382; *In re New 118th LLC*, 396 B.R. at 895 (finding claims that were ordinarily decided by state court, ripe for summary judgment, and lack of Bankruptcy Court having made any substantive decisions warranted abstention).

28. The Presence of a Related Proceeding in State Court. The Debtor acknowledges the existence of the pending litigation in State Court but asserts this factor is nonetheless minimal because of the status of the case in State Court. (Response at ¶ 44). The Debtor cites to *In re Hozhueter*, 571 B.R. 812 (Bankr. W.D. Wis. 2017) for this proposition, but that case is clearly distinguishable. In *Hozhueter* there were six actions pending in three different counties, and the Bankruptcy Court had already scheduled a trial date. *Id.* at 816-817. Here, Major Dental has provided the Debtor with ample discovery in the State Court Litigation and Major Dental has prepared and filed a motion for summary judgment. This factor favors abstention.

29. The Jurisdictional Basis, Other Than 28 U.S.C. § 1334. The Debtor concedes that this factor favors abstention. (Response at ¶ 45).

30. The Degree of Relatedness Between State Court Litigation and Bankruptcy Case. The Debtor again focuses on the claims being "valuable assets" of the estate and the fact that the non-dischargeability action must be decided prior to confirmation. (Response at ¶ 46). The purported value of the claims against Major Dental is belied by the Debtor ascribing no value to the claims in its Liquidation Analysis. Additionally, there is no basis to claim the non-dischargeability action must be concluded before the Court could consider confirmation of the proposed Plan. This factor supports abstention.

31. The Substance, Rather than the Form, of an Asserted "Core" Proceeding. The State Court Litigation is certainly not a "core" proceeding, whereas Major Dental's request to hold the debt non-dischargeable certainly is a "core" proceeding. In substance, however, the "core" portion of the analysis under Major Dental's proposed process is for the Bankruptcy Court to evaluate the jury's findings in the State Court Litigation to determine if the claims constitute non-dischargeable debts. Major Dental, therefore, submits that the nature of the issues is largely non-core because the underlying claims are wholly based on state law.

32. The Feasibility of Severing State Law Claims from Core Bankruptcy Matters. The Motions state that the State Court Litigation could enter a judgment and this Court would be left to enforce any judgement and determine whether those claims are non-dischargeable. The Debtor responds by indicating this will result in "fractured and prolonged litigation." (Response at ¶ 48). The Debtor misunderstands how the case would proceed in practice. The State Court would oversee a jury trial – as is Major Dental's right. Major Dental would then bring those findings to the Bankruptcy Court to determine whether the claims constitute non-dischargeable debts. This would be done through a motion, to which the Debtor would have an opportunity to respond. There would be no need for "fractured" litigation. The Court would merely make a determination based upon the written submissions of the parties. It is thus feasible to sever the state law claims from the core bankruptcy matters. This factor favors abstention.

33. The Burden on the Bankruptcy Court's Docket. As previously stated, the Bankruptcy Court has nearly six times the caseload of the State Court. Adding the State Court Litigation would undoubtedly add to the relatively high case load this Court handles. This factor favors abstention.

34. The Right to a Jury Trial. The Court asked Major Dental to address this factor, given the jury trial waiver clause contained in the parties' asset purchase agreement (the "APA"). Despite this clause, Major Dental has a right to a jury trial.

35. Major Dental is pursing claims for fraud against Jackson Family Dentistry and the Debtor, including fraudulent inducement claims. Major Dental is entitled to a jury trial on claims that seek this type of relief in connection with the APA. *See Gardner v. North Roofing & Siding Corp. v. Champagne*, 285 N.Y.S.2d 693, 696 (N.Y. Co. Ct. 1967) (holding defendants were entitled to a jury trial because of fraud on the part of the plaintiff, despite a clause in the contract waiving the right to a jury trial); *Ferry v. Poughkeepsie Galleria Co.*, 197 A.D.2d 913 (N.Y. App. Div. 1993) ("Although plaintiffs' commercial lease contained a provision waiving the right to trial by jury of any action arising out of that lease, that waiver does not apply to plaintiffs' causes of action alleging that plaintiff Ferry was induced to enter into the lease agreement by defendant's fraudulent misrepresentations."); *China Development Indus. Bank v. Morgan Stanley & Co. Inc.*, 86 A.D.3d 435, 436-437 (N.Y. App. Div. 2011) ("As the validity of the parties' 2007 investment transaction is challenged by allegations, the motion court properly concluded that the jury waiver provision in the agreement was inapplicable to the fraudulent inducement cause of action."); *C&C Wholesale, Inc. v. Fusco Management Corp.*, 564 So. 2d 1259, 1261 (Fla. Ct. App. 1990) (recognizing that if there are allegations that a lease as a whole is legally unenforceable, a jury waiver clause is inapplicable to claims arising out of the lease).[8]

36. Second, even if the jury-waiver provision in the APA was applicable to Major Dental's fraud claims, the Debtor has waived its right to invoke that provision by filing a Jury Demand and paying the Jury Fee in the State Court Litigation.

37. Waiver is the voluntary and intentional relinquishment of a known right. *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 35, 325 Wis. 2d 135, 785 N.W.2d 302. In the State Court

[8] The Debtor cites *Parsons v. Associated Banc-Corp.*, 2017 WI 37, 374 Wis. 2d 513, 893 N.W.2d 212 for the proposition that there is no right to a jury trial (Response at ¶ 39). But it is unclear why the Debtor would rely on this case. The court's holding in *Parsons* has no applicability to this case. In *Parsons*, the court simply affirmed the principle that a pre-litigation jury waiver provision in a contract may be enforceable. *Id.* at ¶ 34.

Litigation, Judge Pouros issued a Scheduling Order on April 29, 2020, several days after the Scheduling Conference held on April 21, 2020. The Scheduling Order stated that the "Jury Fee is due by May 5, 2020. If no jury fee is paid, the matter shall be tried to the Court." On April 23, 2020, Jackson Family Dentistry filed a Jury Demand and paid the Jury Fee in the amount of $72.00. That was almost three years ago.

38. Having filed the Jury Demand and paid the Jury Fee, the Debtor waived its right to invoke the jury-waiver provision in the APA. *See Kirsch v. Brightstar Corp.*, 2014 WL 5166527, **3-4 (N.D. Ill. Oct. 10, 2014) ("Because Plaintiff has taken actions inconsistent with his contractual right to a bench trial, the Court finds that Plaintiff waived that contractual right."); *Sapp v. The Propeller Company LLC,* 12 A.D.3d 218, 219 (N.Y. App. Div. Nov. 16, 2004) ("As to the lease's jury-waiver clause, it is no longer determinative of the mode of trial. Defendants waived the protection of that clause by affirmatively demanding a jury trial and then failing to seek to withdraw the demand until nine months later.").

39. The Debtor cites to *Westminster Securities Corp. v. Uranium Energy Corp.*, 255 F.Supp.3d 490 (S.D.N.Y. 2017) for the proposition that a filed jury demand is a nullity if the party entered into an agreement that waived the right to a jury trial. (Response at ¶ 39). The facts in *Westminster* are distinguishable and, therefore, the holding from that case is not applicable.

40. In *Westminster*, the defendants filed an answer that stated "Defendants demand a trial by jury in this action of all issues so triable." *Id*. at 495. After discovery closed, the defendants sought to withdraw their jury demand because the parties entered into a contract that contained a jury waiver provision. *Id*. In response, the plaintiffs argued that the defendants waived the contractual jury-waiver provision by filing the jury demand. *Id*. The Court rejected the plaintiffs' argument on the grounds that the text of the jury demand sought a jury trial only as to "all issues so triable." *Id*. Because no issues were "triable" pursuant to the jury waiver provision in the contract, the Court concluded that the jury demand that the defendants filed was

not a waiver. *Id*. at 495-496. Here, the Debtor's jury demand seeks a jury trial on all claims. It states: "PLEASE TAKE NOTICE that pursuant to Wis. Stat. § 805.01, the plaintiffs, Jackson Family Dentistry, LLC and Scott Charmoli, DDS, hereby demand a trial by a jury of twelve (12)."[9] *Westminster* is thus inapposite.

41. Additionally, the Debtor does not have the right to withdraw his Jury Demand by simply mentioning it in this chapter 11 case. Although the Debtor claims that he will now consent to a bench trial (Response at ¶ 39), he cannot withdraw the Jury Demand without consent from Major Dental, which will not be given. Section 805.01(3) of the Wisconsin Statutes provides, in no uncertain terms: "A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties." *See also Przybyla v. Chain Belt Co.*, 157 Wis. 216, 147 N.W. 31 (Wis. 1914) ("When one party to a civil action demands a jury and pays the fees required by subdivision 2, § 19, of the civil court act, it is not necessary for the opposing party to demand a jury, because the case then becomes a jury case, for trial by either 6 or 12 men, according to the demand which has been made. Any other interpretation of the statute would mean that one party could practically lay a trap for his opponent by demanding a jury and paying the fees and afterwards waiving his demand when it had become too late for his opponent to make it."). Major Dental, therefore, has a right to a jury trial.[10] This factor favors permissive abstention.

42. <u>The Presence of Non-Debtor Parties</u>. The Debtor apparently believes this factor

---

[9] The *Westminster* court also noted that the contract at issue contained a provision that addressed waivers and provided that no provision of the contract may be waived except in a written instrument signed by the party against whom enforcement of any such waived provision is sought. *Westminster*, 255 F.Supp.3d at 495. The court concluded that the answer that contained the jury demand was not such a "written instrument," and it was signed only by an attorney, not the defendants. *Id*. In this case, there is no similar waiver provision in the APA.

[10] The Debtor also claims that Major Dental will lose its right to a jury trial if and when it files a proof of claim. As stated in the Motion to Abstain, that is precisely why Major Dental seeks an extension on the deadline to file its proof of claim until after the State Court Litigation is completed.

favors denying abstention because this Court has jurisdiction over the entirety of the State Court Litigation. (Response at ¶ 52). Major Dental disputes this Court's jurisdiction over its claims against Jackson Family Dentistry. (*See* Section I.B, *supra*). But additionally, this assertion does not address the factor, which asks whether there are non-debtor parties in the State Court Litigation. There are non-debtor parties. This factor favors abstention.

43. On balance, the factors unquestionably support permissive abstention.

## III. The Automatic Stay Should Be Lifted to Allow Major Dental to Liquidate Its Claim Against the Debtor and Jackson Family Dentistry

44. In connection with the request for abstention, Major Dental respectfully requests that the Court grant relief from the automatic stay in order to allow it to liquidate its claims against the Debtor and Jackson Family Dentistry in the State Court Litigation.

45. The Debtor claims that the factors considered for lifting the automatic stay favor denial of the request. Major Dental disagrees.

46. The Debtor asserts that granting relief from the automatic stay will result in prejudice to him and his estate because it would cause him to litigate in multiple forums and incur the cost of two cases and trials. (Response at ¶¶ 55-56). The Debtor misunderstands the process. There will not be two litigation cases and trials. The State Court will preside over the jury trial, and this Court will then determine, through motion practice, whether the jury's findings constitute non-dischargeable debts. The Debtor's concern is thus overstated; there is no great prejudice by allowing the State Court Litigation to proceed.

47. The Debtor's reliance on *In re Frantz,* 602 B.R. 687 (Bankr. E.D. Wis. 2019) is misplaced. In that case, the creditor sought relief from the automatic stay to "pursue Frantz's assets in a non-bankruptcy forum," which the Court correctly notes was contrary to the core purposes of protecting the debtor from an uncontrollable scramble for its assets and precludes one creditor from pursuing a remedy to the disadvantage of other creditors. *Id.* at 693. Major Dental

is not seeking to pursue the Debtor's assets in an uncontrollable scramble. The Motion to Abstain makes clear that Major Dental merely seeks to liquidate its claims in the State Court; it would not pursue collection of any judgment in that proceeding. (Motion to Abstain at ¶¶ 5, 21, 38).

48. The Debtor also attempts to downplay the hardship to Major Dental by claiming there is no right to a jury trial (despite the fact that the Debtor requested a jury trial) and presuming that this Court could more efficiently resolve the State Court Litigation. (Response at ¶ 57). These arguments fail to account for the substantially higher caseload this Court handles. (*See* Section I.A, *supra*). But more importantly, it fails to acknowledge that Major Dental will not consent to the entry of a final order and will seek to withdraw the reference. Any efficiency of this Court is therefore irrelevant in this context.

49. The Debtor then tries to argue that Major Dental does not have a probability of succeeding because it was not actually harmed by the Debtor's scheme to defraud his patients and insurers. (Response at ¶ 58). This is a surprising argument, given that the Debtor has already been convicted of orchestrating his scheme. It is hard to fathom how a purchaser of a business that was premised on an illegal scheme could not be damaged by the seller's bad acts. This argument is wholly without merit.

## IV. The Court Should Extend the Deadline for Major Dental to File a Proof of Claim Until After the Claims Can Be Liquidated in the State Court Litigation

50. The Debtor opposes Major Dental's request to extend the deadline to file a claim. The Debtor's asserted basis is that Major Dental seeks to avoid the Court's equitable jurisdiction. This is not true. Major Dental only seeks to preserve its jury trial rights. As stated in the Motion to Abstain, Major Dental will file a proof of claim after the State Court has liquidated Major Dental's claims. (Motion to Abstain at ¶ 41). Major Dental, therefore, will submit to the equitable jurisdiction of this Court, but not until after it has exercised its right to a jury trial.

## CONCLUSION

51. Based upon the foregoing, Major Dental respectfully requests that the Court overrule the Debtor's objections and grant the Motions.

Dated: January 27, 2023

**MAJOR DENTAL PARTNERS, LLC and DR. PAKO MAJOR**

By: /S/ Devon J. Eggert
One of Their Attorneys

Devon J. Eggert
Beck Chaet Bamberger & Polsky, S.C.
Two Plaza East, Suite 1085
330 E. Kilbourn Ave, Suite 1085
Milwaukee, Wisconsin 53202
Phone: (414) 390-5928
E-mail: deggert@bcblaw.net

and

Patrick J. Knight
Kristen N. Nelson
Gimbel, Reilly, Guerin & Brown, L.L.P.
Two Plaza East, Suite 1170
330 E. Kilbourn Ave., Ste. 1170
Milwaukee, Wisconsin 53202
Phone: (414) 271-1440
E-mail: pknight@grgblaw.com
knelson@grgblaw.com